UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

APPALACHIAN VOICES,
CENTER FOR BIOLOGICAL DIVERSITY,
and SIERRA CLUB,
Plaintiffs,

        v.                           No. 3:24-cv-00411-CLC-DCP

TENNESSEE VALLEY AUTHORITY,
Defendant.

## ANSWER OF TENNESSEE VALLEY AUTHORITY

Pursuant to the Federal Rules of Civil Procedure, Defendant Tennessee Valley Authority ("TVA") responds to Appalachian Voices, Center for Biological Diversity, and Sierra Club's ("Plaintiffs") Complaint (Doc. 1) as follows. The numbered paragraphs of this Answer correspond to the numbered paragraphs of the Complaint. TVA does not waive any defensive theory or agree to or admit that any of the headings in Plaintiffs' Complaint are accurate, appropriate, or substantiated.

Responding to the numbered allegations of Plaintiffs' Complaint, TVA states as follows:

1.      The allegations in Paragraph 1 constitute Plaintiffs' characterization of their case and constitute legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

2.      TVA denies the allegations in the first sentence of Paragraph 2. The allegations in the second sentence constitute legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

3.      TVA admits that it proposes to retire and demolish the nine existing coal-fired units at the Kingston Fossil Plant ("KIF") and to construct and operate facilities to replace the

1

retired generation, but the remaining allegations in Paragraph 3 purport to characterize TVA's June 15, 2021 Notice of Intent, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

4.      The allegations in the first sentence of Paragraph 4 purport to characterize TVA's June 15, 2021 Notice of Intent, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. The allegations in the second sentence are vague and lack sufficient detail to permit a response and are therefore denied.

5.      TVA admits that it prepared an environmental impact statement ("EIS") to evaluate the environmental and social effects of the proposed retirement and demolition of the KIF and construction and operation of the replacement facilities at the KIF reservation, and TVA avers that the remaining allegations in Paragraph 5 purport to characterize the EIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

6.      The allegations in Paragraph 6 purport to characterize the Notice of Intent, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

7.      The allegations in the first sentence of Paragraph 7 are vague and are therefore denied. As to the allegations in the second sentence, TVA admits that it executed an agreement with East Tennessee Natural Gas, LLC ("ETNG") on August 12, 2021, subject to certain conditions precedent, for the construction of a new 122-mile natural gas pipeline that would serve as a conduit for natural gas from multiple providers to a potential future natural gas-fired power plant at the KIF reservation. This Precedent Agreement speaks for itself and provides the best

evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. TVA avers that the Precedent Agreement, which is a preliminary agreement between a transporter and shipper of natural gas to enter into a future firm natural gas transportation agreement if certain conditions precedent are met, was contingent on the outcome of TVA's environmental review and all necessary regulatory approvals and/or authorizations. TVA further avers that to the best of its knowledge, information, and belief, ETNG is not a "gas supply" company, but instead constructs pipelines for which TVA separately contracts to reserve transportation capacity via a Firm Transportation Agreement or Service Agreement, which generally, is for a duration of 20 years. TVA and ETNG have not executed a Service Agreement, which requires the implementation of certain conditions precedent including ETNG's ability to secure a Certificate of Convenience and Necessity ("CCN") from the Federal Energy Regulatory Commission ("FERC"), which has not yet occurred. Unless expressly admitted, any remaining allegations in Paragraph 7 are denied.

8. The allegations in the first sentence of Paragraph 8 constitute legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied. The allegations in the second sentence are also denied.

9. TVA admits the allegation in Paragraph 9 that it published a draft EIS ("DEIS") in May 2023, but avers that the remaining allegations purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

10. TVA admits the allegations in Paragraph 10.

11. The allegations in the first sentence of Paragraph 11 purport to characterize the final EIS ("FEIS"), which speaks for itself and provides the best evidence of its contents. Any

3

allegations contrary to its plain meaning, language, and context are denied. The remaining allegations in Paragraph 11 constitute legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

12. The allegations in Paragraph 12 purport to characterize comments purportedly made by the U.S. Environmental Protection Agency ("EPA"), which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

13. TVA denies the allegations in the first and third sentences of Paragraph 13. The allegations in the second sentence purport to characterize the April 2024 KIF Record of Decision ("ROD") and FEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

14. TVA denies the allegations in Paragraph 14.

15. The allegations in Paragraph 15 constitute Plaintiffs' request for relief, and TVA denies that Plaintiffs are entitled to the relief requested or to any other relief.

16. The allegations in Paragraph 16 purport to characterize 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied. TVA avers that Plaintiffs may lack standing to bring the claims set forth in its Complaint, thus denying the court subject-matter jurisdiction.

17. The allegations in Paragraph 17 purport to characterize the Declaratory Judgment Act, 28 U.S.C. § 2201–02 and 5 U.S.C. §§ 501 et seq., which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and

4

context are denied. TVA further denies that Plaintiffs are entitled any relief pursuant to the Declaratory Judgment Act and avers that Plaintiffs may lack standing to obtain judicial review.

18.     TVA admits that venue is proper in this district under 28 U.S.C. § 1391(b)(2), but denies any remaining allegations in Paragraph 18.

19.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19, and the allegations are therefore denied.

20.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20, and the allegations are therefore denied.

21.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21, and the allegations are therefore denied.

22.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22, and the allegations are therefore denied.

23.     TVA admits that Appalachian Voices files comments on NEPA environmental reviews from time to time, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 23, and the allegations are therefore denied.

24.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24, and the allegations are therefore denied.

25.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25, and the allegations are therefore denied.

26.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26, and the allegations are therefore denied.

27.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27, and the allegations are therefore denied.

28. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28, and the allegations are therefore denied.

29. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29, and the allegations are therefore denied.

30. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first, second, and third sentences in Paragraph 30, and the allegations are therefore denied. To the extent Plaintiffs purport to characterize their comments on the KIF EIS, TVA avers that the comments speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

31. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31, and the allegations are therefore denied.

32. TVA admits that the proposed action, including the pipeline, could impact species, streams, wetlands, habitats for freshwater species, and waterbodies, but avers that those impacts are described in the FEIS and denies any allegations in Paragraph 32 that are contrary to the description of those impacts in the FEIS.

33. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33, and the allegations are therefore denied.

34. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34, and the allegations are therefore denied.

35. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35, and the allegations are therefore denied.

36. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36, and the allegations are therefore denied.

37.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37, and the allegations are therefore denied.

38.     TVA admits that Sierra Club files comments on TVA's NEPA environmental reviews from time to time, but that the remaining allegations in Paragraph 38 are vague and TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations, and the allegations are therefore denied.

39.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39, and the allegations are therefore denied.

40.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40, and the allegations are therefore denied.

41.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41, and the allegations are therefore denied.

42.     TVA admits that the proposed pipeline route would cross White Creek but lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42, and the allegations are therefore denied.

43.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43, and the allegations are therefore denied.

44.     TVA denies the allegations in Paragraph 44 and avers that Plaintiffs are not entitled to the relief requested or to any other relief.

45.     TVA admits that Plaintiffs submitted comments on TVA's environmental review of the proposed natural-gas-fired KIF Plant, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence of Paragraph 45. TVA admits the allegations in the second and fourth sentences of Paragraph 45. TVA admits the

7

allegations in the third sentence that Appalachian Voices and Sierra Club submitted a letter dated March 19, 2024, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. Unless expressly admitted, the allegations in Paragraph 45 are denied.

46.     TVA admits the allegations in the first and second sentences of Paragraph 46 but avers that the appropriate citation for the TVA Act, as amended, is 16 U.S.C. §§ 831 to 831ee. TVA admits members of the TVA Board of Directors are appointed by the President with the advice and consent of the Senate, in accordance with 16 U.S.C. § 831a.

47.     The allegations in the first sentence of Paragraph 47 are vague and are therefore denied. TVA admits the allegations in the second, third, and fourth sentences of Paragraph 47.

48.     The allegations in the first, second, and fifth sentences of Paragraph 48 are vague and are therefore denied. Answering the allegations of the third sentence of Paragraph 48, TVA admits that it is not regulated by a public utility commission, but TVA denies the remaining allegations in the third sentence. Answering the allegations of the fourth sentence of Paragraph 48, TVA admits that it does not have shareholders, but TVA denies the remaining allegations in the fourth sentence as vague. TVA denies the allegations in the sixth sentence.

49.     The allegations in Paragraph 49 constitute legal conclusions to which no response is required and purports to characterize 16 U.S.C. § 831c(b), which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

50.     TVA admits the allegations in Paragraph 50.

51.     The allegations in Paragraph 51 constitute legal conclusions to which no response is required and purport to characterize the APA, 5 U.S.C. § 702, which speaks for itself and

provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

52.     The allegations in Paragraph 52 constitute legal conclusions to which no response is required and purport to characterize provisions of the APA, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

53.     The allegations in Paragraph 53, including its footnote, constitute legal conclusions to which no response is required and purport to characterize NEPA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

54.     The allegations in Paragraph 54 constitute legal conclusions to which no response is required and purport to characterize NEPA and a judicial decision, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

55.     The allegations in Paragraph 55 constitute legal conclusions to which no response is required and purport to characterize NEPA and its implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

56.     The allegations in Paragraph 56 constitute legal conclusions to which no response is required and purport to characterize one of NEPA's implementing regulations, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

57. The allegations in Paragraph 57 constitute legal conclusions to which no response is required and purport to characterize NEPA and its implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

58. The allegations in Paragraph 58 constitute legal conclusions to which no response is required and purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

59. The allegations in Paragraph 59 constitute legal conclusions to which no response is required and purport to characterize one of NEPA's implementing regulations, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

60. The allegations in Paragraph 60 constitute legal conclusions to which no response is required and purport to characterize NEPA and its implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

61. The allegations in Paragraph 61 constitute legal conclusions to which no response is required and purport to characterize NEPA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

62. The allegations in Paragraph 62 constitute legal conclusions to which no response is required and purport to characterize one of NEPA's implementing regulations, which speaks for

10

itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

63. The allegations in Paragraph 63 constitute legal conclusions to which no response is required and purport to characterize NEPA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

64. The allegations in Paragraph 64 constitute legal conclusions to which no response is required and purport to characterize a provision of the TVA Act, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

65. The allegations in Paragraph 65 constitute legal conclusions to which no response is required and purport to characterize provisions of the TVA Act, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

66. The allegations in Paragraph 66 constitute legal conclusions to which no response is required and purport to characterize provisions of the TVA Act, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

67. The allegations in Paragraph 67 constitute legal conclusions to which no response is required and purport to characterize provisions of the TVA Act and judicial decisions, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

68. The allegations in Paragraph 68 are vague and are therefore denied.

11

69. TVA admits that it produces electricity from sources including coal, gas, nuclear, hydro, wind, and solar, and avers that the remaining allegations in Paragraph 69 are vague and are therefore denied.

70. The allegations in Paragraph 70 are vague and lack context sufficient to permit a response and are therefore denied.

71. The allegations in Paragraph 71 are vague and are therefore denied.

72. TVA admits the allegations in Paragraph 72.

73. TVA admits the allegations in Paragraph 73.

74. TVA admits that in June 2019, TVA issued the 2019 Integrated Resource Plan ("2019 IRP") and associated programmatic Environmental Impact Statement ("2019 IRP EIS"), which described how TVA would meet electric power demands in its service area for the next 20 years while fulfilling its mission of providing low-cost, reliable power; environmental stewardship; and economic development; and TVA avers that the remaining allegations in Paragraph 74 constitute legal conclusions to which no response is required and purport to characterize the TVA Act, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. Unless expressly admitted, the allegations in Paragraph 74 are denied.

75. The allegations in the first sentence of Paragraph 75 purport to characterize the 2019 IRP, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. The allegations in the second sentence are denied.

76. The allegations in Paragraph 76 purport to characterize the 2019 IRP, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

77. The allegations in Paragraph 77 purport to characterize the 2019 IRP, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

78. The allegations in Paragraph 78 purport to characterize the 2019 IRP, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

79. TVA admits the allegations in the first sentence of Paragraph 79. The allegations in the second and third sentences purport to characterize the 2019 IRP EIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. Unless expressly admitted, the allegations of Paragraph 79 are denied.

80. TVA admits the allegations in Paragraph 80 that on August 22, 2019, TVA's Board of Directors approved the 2019 IRP and associated programmatic 2019 IRP EIS.

81. The allegations in Paragraph 81 are vague and TVA avers that it has proposed the construction and operation of gas-fired combustion turbine plants at TVA's Paradise and Colbert reservations to replace the capacity lost due to the retirement of combustion turbine units at Allen and Johnsonville, and that it has approved the retirement of coal-fired units at the Cumberland Fossil Plant and construction and operation of a natural gas-fueled combined cycle plant to replace the generation capacity of the retired units. Unless expressly admitted, the allegations in Paragraph 81 are denied.

82.     TVA denies the allegations in Paragraph 82.

83.     The allegations in Paragraph 83 purport to characterize a February 2, 2022 letter from TVA's CEO, Jeff Lyash, to Congress, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

84.     The allegations in Paragraph 84 purport to characterize an article purportedly published on TVA's website, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

85.     TVA admits that, on August 24, 2023, the TVA Board of Directors provided an "initial approval" for the "Kingston Energy Solution," including the project in the FY 2024 TVA budget. Through the initial approval, the Board also delegated final decision-making authority on the project to TVA's CEO, Mr. Lyash. TVA further admits that, on November 10, 2021, the TVA Board took its first action approving the budget for a potential new generation asset at TVA's Kingston site and making specific delegations to TVA's CEO with respect to that potential project. On May 10, 2023, the Board took additional actions with respect to the potential Kingston project. On August 24, 2023, the Board approved the budgets for all capital projects identified by line-item in the FY 2024 TVA budget and delegated authority to the CEO to take certain actions with respect to those potential projects and to make the final decision to proceed with the project. The Board's actions with respect to the Kingston project are reflected in published minutes that are available on TVA's public website, Meetings Archive, and those minutes speak for themselves. Unless expressly admitted, the allegations of Paragraph 85 are denied.

86.     The allegations in Paragraph 86 purport to characterize statements made by Mr. Lyash at the February 14, 2024 TVA Board meeting, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and

14

context are denied. TVA avers that during the February 14, 2024 Board meeting, Mr. Lyash noted that the $15 million dollars in capital expenditure during the next three years would include investments for the ongoing upgrades and modernization of TVA's hydro units along with investments in gas units. He further stated that any discussion on gas investments must include solar and renewable energy because TVA cannot choose between gas and solar and, as such, TVA is aggressively investing in both.

87.     TVA admits that it entered into a contract for the purchase of the combustion turbines and a precedent agreement for construction of a pipeline, which were contingent on the outcome of TVA's environmental review and all necessary regulatory approvals and/or authorizations, and TVA denies any remaining allegations in Paragraph 87.

88.     TVA admits that it executed a Precedent Agreement with ETNG on August 12, 2021, subject to certain conditions precedent, for the construction of a new 122-mile natural gas pipeline that would serve as a conduit for natural gas from multiple providers to a potential future natural gas-fired power plant at the KIF reservation. This Precedent Agreement speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. TVA avers that the Precedent Agreement, which is a preliminary agreement between a transporter and shipper of natural gas to enter into a future firm natural gas transportation agreement if certain conditions precedent are met, was contingent on the outcome of TVA's environmental review and all necessary regulatory approvals and/or authorizations. TVA further avers that to the best of its knowledge, information, and belief, ETNG is not a "gas supply" company, but instead constructs pipelines for which TVA separately contracts to reserve transportation capacity via a Firm Transportation Agreement or Service Agreement, which generally, is for a duration of 20 years. TVA and ETNG have not executed a Service Agreement,

which requires the implementation of certain conditions precedent, including ETNG's ability to secure a CCN from FERC, which has not yet occurred. TVA therefore denies the allegations that the Precedent Agreement is a long-term gas supply contract and denies any remaining allegations in Paragraph 88.

89.　　TVA admits the allegations in Paragraph 89 that TVA and ETNG have amended the Precedent Agreement since August 12, 2021, but avers that the Precedent Agreement was amended on December 21, 2022; July 19, 2023; and March 4, 2024.

90.　　TVA admits that it received a Freedom of Information Act ("FOIA") request from Southern Environmental Law Center ("SELC") on August 5, 2021, for the August 12, 2021 Precedent Agreement, and received a FOIA request from SELC on April 12, 2024 for amendments to the August 12, 2021 Precedent Agreement, and that TVA provided copies of the documents with appropriate redactions, but TVA denies the remaining allegations in Paragraph 90.

91.　　The allegations in Paragraph 91 purport to characterize ETNG's application for a CCN from FERC, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

92.　　TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 92 and the allegations are therefore denied. The allegations in the second sentence purport to characterize a Securities and Exchange Commission ("SEC") filing purportedly by ETNG, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

93.　　TVA denies the allegations in Paragraph 93.

94.　　The allegations in Paragraph 94 purport to characterize the Precedent Agreement, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to

16

its plain meaning, language, and context are denied. TVA denies any remaining allegations in Paragraph 94.

95.     The allegations in Paragraph 95 purport to characterize the Precedent Agreement, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

96.     The allegations in Paragraph 96 are vague and are therefore denied.

97.     TVA admits the allegations in Paragraph 97 that it signed an agreement with General Electric ("GE") on December 22, 2022, but the remaining allegations in Paragraph 97 purport to characterize provisions in the December 22, 2022 agreement between TVA and GE, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

98.     TVA admits that SELC submitted a FOIA request on January 23, 2023, for documents related to procurement actions and reports from the TVA CEO to the TVA Board of Directors for the Cumberland and Kingston Fossil Plant retirement and replacement, and admits that a copy of TVA's December 22, 2022 agreement with GE was provided to SELC on May 19, 2023, containing appropriate redactions pursuant to applicable FOIA Exemptions, but TVA denies the remaining allegations in Paragraph 98.

99.     The allegations in Paragraph 99 purport to characterize an email sent by TVA's CEO Jeff Lyash to the TVA Board, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

100.    TVA admits the allegations in Paragraph 100.

101.    The allegations in Paragraph 101 purport to characterize one of the provisions in the December 22, 2022 agreement between TVA and GE, which speaks for itself and provides the

best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

102. The allegations in Paragraph 102 purport to characterize the December 22, 2022 agreement between TVA and GE, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. TVA denies any remaining allegations in Paragraph 102.

103. The allegations in Paragraph 103 purport to characterize an SEC filing, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

104. TVA admits the allegations in Paragraph 104 that a DEIS was published on May 12, 2023, and avers that the remaining allegations purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

105. TVA admits that Plaintiffs provided comments on the DEIS, but avers that the remaining allegations in Paragraph 105 are vague and are therefore denied.

106. The allegations in Paragraph 106 purport to characterize comments submitted by EPA on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

107. The allegations in Paragraph 107 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

108. The allegations in Paragraph 108 purport to characterize the DEIS and TVA's "Aging Coal Fleet Evaluation," which speak for themselves and provide the best evidence of their

18

contents. Any allegations contrary to their plain meaning, language, and context are denied. TVA denies any remaining allegations in Paragraph 108.

109.    The allegations in Paragraph 109 purport to characterize the DEIS and EPA's 2020 "Effluent Limitation Guidelines," which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied. TVA denies any remaining allegations in Paragraph 109.

110.    The allegations in Paragraph 110 purport to characterize comments submitted by Plaintiffs and EPA on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

111.    The allegations in Paragraph 111 purport to characterize comments submitted by EPA on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

112.    The allegations in Paragraph 112 purport to characterize comments submitted by Plaintiffs and EPA on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

113.    The allegations in Paragraph 113 purport to characterize comments submitted by EPA on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

114.    The allegations in Paragraph 114 purport to characterize comments submitted by EPA on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

115.    The allegations in Paragraph 115 constitute legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

19

116. The allegations in Paragraph 116 purport to characterize comments submitted by Plaintiffs on the DEIS and TVA's "Aging Coal Fleet Evaluation," which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

117. The allegations in Paragraph 117 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

118. The allegations in Paragraph 118 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

119. The allegations in Paragraph 119 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

120. The allegations in Paragraph 120 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

121. The allegations in Paragraph 121 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

122. The allegations in Paragraph 122 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

123.    The allegations in Paragraph 123 purport to characterize comments by EPA and Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

124.    The allegations in Paragraph 124 purport to characterize comments by EPA on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

125.    The allegations in Paragraph 125 purport to characterize comments by EPA and Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

126.    The allegations in Paragraph 126 purport to characterize the DEIS and the Grid Strategies report submitted by Plaintiffs during the comment period, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

127.    The allegations in Paragraph 127 purport to characterize the Grid Strategies report, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

128.    The allegations in Paragraph 128 purport to characterize comments by EPA and Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

129.    The allegations in Paragraph 129 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

21

130. The allegations in Paragraph 130 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

131. The allegations in Paragraph 131 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

132. The allegations in Paragraph 132 purport to characterize comments by EPA and Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

133. The allegations in Paragraph 133 purport to characterize comments by EPA and Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

134. The allegations in Paragraph 134 purport to characterize comments by EPA and Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

135. The allegations in Paragraph 135 purport to characterize Plaintiffs' comments on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

136. The allegations in Paragraph 136 purport to characterize comments by the National Park Service on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

137.     The allegations in Paragraph 137 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

138.     The allegations in Paragraph 138 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

139.     The allegations in Paragraph 139 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

140.     The allegations in Paragraph 140 constitute legal conclusions to which no response is required and purport to characterize the Paris Agreement, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

141.     The allegations in Paragraph 141 purport to characterize Executive Orders 14,008 and 14,057, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

142.     The allegations in Paragraph 142 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

143.     The allegations in Paragraph 143 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

144. The allegations in the first and third sentences of Paragraph 144 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. The allegations in the second sentence of Paragraph 144 are vague and are therefore denied. TVA avers that each greenhouse gas ("GHG") is assigned a global warming potential ("GWP"), which is an estimate of the relative amount of infrared radiation it absorbs in comparison to $CO_2$ on a pound-for-pound basis, projected over a 100-year period. Unless expressly admitted, the allegations in Paragraph 144 are denied.

145. The allegations in Paragraph 145 purport to characterize comments by EPA and Plaintiffs, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

146. The allegations in Paragraph 146 purport to characterize comments by EPA and Plaintiffs, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

147. The allegations in Paragraph 147 purport to characterize comments by Plaintiffs, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

148. The allegations in Paragraph 148 purport to characterize comments by EPA and Plaintiffs, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

149. The allegations in the first and third sentences of Paragraph 149 purport to characterize comments by Plaintiffs, which speak for themselves and provide the best evidence of

their contents. Any allegations contrary to their plain meaning, language, and context are denied. The allegations in the second sentence are vague and are therefore denied.

150. TVA admits the allegations in Paragraph 150.

151. The allegations in Paragraph 151 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

152. The allegations in Paragraph 152 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

153. The allegations in Paragraph 153 purport to characterize comments by EPA and Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

154. The allegations in Paragraph 154 purport to characterize comments by EPA and Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

155. The allegations in Paragraph 155 purport to characterize EPA's comments on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

156. TVA admits the allegations in the first sentence of Paragraph 156 that a July 3, 2023 letter from SELC submitted on behalf of two Plaintiffs in this action, Appalachian Voices and Sierra Club, references several reports, including one from the Applied Economics Clinic, but avers that the allegations purport to characterize the reports, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning,

25

language, and context are denied. The allegations in the second sentence purport to characterize a report from the Applied Economics Clinic, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

157.    TVA denies the allegations in Paragraph 157.

158.    The allegations in the first sentence of Paragraph 158 purport to characterize the 2019 IRP, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. TVA denies the allegations in the second sentence.

159.    TVA denies the allegations in Paragraph 159.

160.    The allegations in Paragraph 160 purport to characterize the Grid Strategies report and the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

161.    The allegations in Paragraph 161 purport to characterize the Grid Strategies report, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

162.    The allegations in Paragraph 162 purport to characterize the Grid Strategies report, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

163.    TVA denies the allegations in Paragraph 163.

164.    The allegations in Paragraph 164 purport to characterize Plaintiffs' comments and reports submitted by Plaintiffs, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

26

165.     TVA admits the allegations in the first sentence of Paragraph 165. TVA denies the allegations in the second sentence.

166.     The allegations in Paragraph 166 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

167.     The allegations in Paragraph 167 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

168.     The allegations in Paragraph 168 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

169.     The allegations in Paragraph 169 are vague and are therefore denied.

170.     TVA denies the allegations in Paragraph 170.

171.     The allegations in Paragraph 171 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

172.     The allegations in Paragraph 172 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

173.     The allegations in Paragraph 173 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

174.    The allegations in Paragraph 174 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

175.    The allegations in Paragraph 175 purport to characterize the FEIS and EPA's comments, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

176.    The allegations in Paragraph 176 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

177.    TVA denies the allegations in Paragraph 177.

178.    The allegations in Paragraph 178 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

179.    The allegations in Paragraph 179 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

180.    The allegations in Paragraph 180 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

181.    The allegations in Paragraph 181 are vague and are therefore denied.

182.    The allegations in Paragraph 182 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

28

183.    The allegations in Paragraph 183 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

184.    TVA denies the allegations in the first and third sentences of Paragraph 184. The allegations in the second sentence purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

185.    TVA denies the allegations in Paragraph 185.

186.    TVA denies the allegations in Paragraph 186.

187.    TVA denies the allegations in Paragraph 187.

188.    The allegations in Paragraph 188 purport to characterize the FEIS and the Valley Pathways Study, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

189.    TVA denies the allegations in Paragraph 189.

190.    The allegations in Paragraph 190 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

191.    The allegations in Paragraph 191 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

192.    TVA denies the allegations in Paragraph 192.

193.    TVA denies the allegations in Paragraph 193.

194.     The allegations in Paragraph 194 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

195.     TVA denies the allegations in Paragraph 195.

196.     TVA denies the allegations in Paragraph 196.

197.     TVA denies the allegations in Paragraph 197.

198.     TVA denies the allegations in Paragraph 198.

199.     The allegations in Paragraph 199 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

200.     TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 200, and the allegations are therefore denied.

201.     The allegations in Paragraph 201 purport to characterize a version of a Solar Energy Industries Association report, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

202.     The allegations in Paragraph 202 are vague and are therefore denied.

203.     The allegations in Paragraph 203 are vague and are therefore denied.

204.     The allegations in Paragraph 204 are vague and are therefore denied.

205.     The allegations in Paragraph 205 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

206.     TVA denies the allegations in the first sentence of Paragraph 206. The allegations in the second sentence purport to characterize the ROD, which speaks for itself and provides the

30

best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

207. TVA denies the allegations in Paragraph 207.

208. TVA admits that EPA was a cooperating agency in the NEPA review process for the proposed natural-gas-fired KIF Plant and provided comments on the DEIS, but the remaining allegations in Paragraph 208 are vague and are therefore denied.

209. The allegations in Paragraph 209 and its subparts purport to characterize EPA's March 25, 2024 letter, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

210. The allegations in Paragraph 210 purport to characterize EPA's March 25, 2024 letter, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

211. The allegations in Paragraph 211 purport to characterize EPA's March 25, 2024 letter, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

212. The allegations in Paragraph 212 purport to characterize EPA's March 25, 2024 letter, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

213. TVA admits the allegations in the first sentence of Paragraph 213. The allegations in the second sentence purport to characterize an email from EPA to TVA on March 27, 2024, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

31

214. TVA admits the allegations in Paragraph 214 that it sent an email to EPA on April 2, 2024, in response to EPA's March 27, 2024 email, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

215. TVA admits the allegations in Paragraph 215.

216. The allegations in Paragraph 216 purport to characterize the ROD, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

217. The allegations in Paragraph 217 purport to characterize the ROD, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

218. The allegations in Paragraph 218 purport to characterize the ROD, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

219. The allegations in Paragraph 219 purport to characterize the ROD, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

220. The allegations in Paragraph 220 purport to characterize the ROD, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

221. All responses stated above are incorporated herein by reference.

222. The allegations in Paragraph 222 constitute legal conclusions to which no response is required and purport to characterize one of NEPA's implementing regulations, which speaks for

32

itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

223. The allegations in Paragraph 223 constitute legal conclusions to which no response is required.

224. The allegations in Paragraph 224 constitute legal conclusions to which no response is required and purport to characterize NEPA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

225. The allegations in Paragraph 225 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

226. TVA denies the allegations in Paragraph 226.

227. TVA denies the allegations in Paragraph 227.

228. TVA denies the allegations in Paragraph 228.

229. TVA denies the allegations in Paragraph 229.

230. TVA denies the allegations in Paragraph 230.

231. TVA denies the allegations in Paragraph 231.

232. TVA denies the allegations in Paragraph 232.

233. TVA denies the allegations in Paragraph 233.

234. TVA denies the allegations in Paragraph 234.

235. TVA denies the allegations in Paragraph 235.

236. TVA denies the allegations in Paragraph 236.

237. All responses stated above are incorporated herein by reference.

238. The allegations in Paragraph 238 constitute legal conclusions to which no response is required and purport to characterize NEPA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

239. The allegations in Paragraph 239 constitute legal conclusions to which no response is required and purport to characterize NEPA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

240. The allegations in Paragraph 240 constitute legal conclusions to which no response is required and purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

241. The allegations in Paragraph 241 constitute legal conclusions to which no response is required and purport to characterize one of NEPA's implementing regulations, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

242. The allegations in Paragraph 242 constitute legal conclusions to which no response is required and purport to characterize 46 Fed. Reg. 18,026, 18,027 (Mar. 23, 1981), which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

243. The allegations in Paragraph 243 constitute legal conclusions to which no response is required and purport to characterize NEPA, which speaks for itself and provides the best

34

evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

244.     The allegations in Paragraph 244 constitute legal conclusions to which no response is required and purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

245.     TVA denies the allegations in Paragraph 245.

246.     TVA denies the allegations in Paragraph 246.

247.     TVA denies the allegations in Paragraph 247.

248.     TVA denies the allegations in Paragraph 248.

249.     TVA denies the allegations in Paragraph 249.

250.     TVA denies the allegations in Paragraph 250.

251.     The allegations in Paragraph 251 constitute legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

252.     The allegations in Paragraph 252 purport to characterize the 2023 NEPA Guidance on Consideration of Greenhouse Gas Emissions and Climate Change issued by the Council on Environmental Quality, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

253.     The allegations in the first sentence of Paragraph 253 purport to characterize comments submitted to TVA during the NEPA process for the proposed natural-gas-fired KIF Plant, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied. TVA admits that it proposes to retire and demolish the nine existing KIF coal-fired units and add at least 1,500 MW of

35

replacement generation for commercial operation by the end of 2027, and that the operational life cycle of the proposed project is assumed to be 30 years based on current industry assumptions for typical expected operating life of natural gas fueled aero derivatives and a CC natural gas plant, but denies any remaining allegations in the second sentence.

254. The allegations in Paragraph 254 purport to characterize comments submitted to TVA for the proposed natural-gas-fired KIF Plant, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

255. TVA denies the allegations in Paragraph 255.

256. The allegations in Paragraph 256 constitute legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

257. TVA denies the allegations in Paragraph 257.

258. TVA denies the allegations in Paragraph 258.

259. The allegations in Paragraph 259 purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

260. The allegations in Paragraph 260 constitute legal conclusions to which no response is required and purport to characterize the DEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

261. The allegations in Paragraph 261 purport to characterize comments submitted by Plaintiffs, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

262.     The allegations in Paragraph 262 purport to characterize comments submitted by Plaintiffs and EPA, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

263.     The allegations in Paragraph 263 purport to characterize the FEIS and comments submitted by Plaintiffs, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

264.     The allegations in Paragraph 264 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

265.     The allegations in Paragraph 265 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

266.     TVA denies the allegations in Paragraph 266.

267.     TVA denies the allegations in Paragraph 267.

268.     TVA denies the allegations in Paragraph 268.

269.     All responses stated above are incorporated herein by reference.

270.     The allegations in Paragraph 270 constitute legal conclusions to which no response is required and purport to characterize one of NEPA's implementing regulations, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

271.     The allegations in Paragraph 271 constitute legal conclusions to which no response is required and purport to characterize NEPA's implementing regulations, which speak for

themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

272.     TVA admits the allegations in Paragraph 272 that it executed an agreement with ETNG on August 12, 2021, subject to certain conditions precedent, for the construction of a new 122-mile natural gas pipeline that would serve as a conduit for natural gas from multiple providers to the KIF. The Precedent Agreement speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied. TVA avers that the Precedent Agreement, which is a preliminary agreement between a transporter and shipper of natural gas to enter into a future firm natural gas transportation agreement if certain conditions precedent are met, was contingent on the outcome of TVA's environmental review and all necessary regulatory approvals and/or authorizations. TVA denies any remaining allegations in Paragraph 272.

273.     The allegations in Paragraph 273 purport to characterize the Precedent Agreement, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

274.     The allegations in Paragraph 274 are vague and purport to characterize "the original version" of the Precedent Agreement, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

275.     The allegations in Paragraph 275 are denied. TVA avers that it has not executed a Service Agreement with ETNG for the transportation of natural gas to the KIF plant. Execution of a Service Agreement would depend on the satisfaction of certain conditions precedent including ETNG's ability to secure a CCN from FERC, which has not yet occurred.

38

276. The allegations in Paragraph 276 are denied. TVA avers that it has not executed a Service Agreement with ETNG for the transportation of natural gas to the KIF plant. Execution of a Service Agreement would depend on the satisfaction of certain conditions precedent including ETNG's ability to secure a CCN from FERC, which has not yet occurred.

277. TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 277, and the allegations are therefore denied.

278. TVA admits the allegations in Paragraph 278.

279. TVA admits the allegations in Paragraph 279 that it signed an agreement with GE on December 22, 2022, which speaks for itself and provides the best evidence of its contents. Any allegation contrary to its plain meaning, language, and context are denied.

280. TVA denies the allegations in Paragraph 280.

281. The allegations in Paragraph 281 are vague and TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations therein and they are therefore denied.

282. TVA denies the allegations in Paragraph 282.

283. TVA denies the allegations in Paragraph 283.

284. TVA denies the allegations in Paragraph 284.

285. All responses stated above are incorporated herein by reference.

286. The allegations in Paragraph 286 constitute legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

287. The allegations in Paragraph 287 constitute legal conclusions to which no response is required and purport to characterize the TVA Act, which speaks for itself and provides the best

39

evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

288.     The allegations in Paragraph 288 constitute legal conclusions to which no response is required and purport to characterize the TVA Act, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

289.     The allegations in Paragraph 289 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

290.     The allegations in Paragraph 290 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

291.     The allegations in Paragraph 291 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

292.     The allegations in Paragraph 292 purport to characterize the FEIS and ROD, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

293.     TVA denies the allegations in Paragraph 293.

294.     TVA denies the allegations in Paragraph 294.

295.     The allegations in Paragraph 295 are vague and are therefore denied.

296.     The allegations in Paragraph 296 purport to characterize comments submitted by Plaintiffs on the DEIS, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

297.     The allegations in Paragraph 297 are vague and TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations therein, and the allegations are therefore denied.

298.     The allegations in Paragraph 298 purport to characterize the FEIS, TVA's responses to comments, and the Concentric Report, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied.

299.     TVA denies the allegations in Paragraph 299.

300.     TVA denies the allegations in Paragraph 300.

301.     TVA denies the allegations in Paragraph 301.

302.     TVA denies the allegations in Paragraph 302.

303.     The allegations in Paragraph 303 are vague and are therefore denied.

304.     The allegations in Paragraph 304 are vague and are therefore denied.

305.     TVA denies the allegations in Paragraph 305.

306.     TVA denies the allegations in Paragraph 306.

307.     The allegations in Paragraph 307 constitute legal conclusions to which no response is required and purport to characterize the TVA Act, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

308.     TVA denies the allegations in Paragraph 308.

41

309. The allegations in Paragraph 309 purport to characterize the FEIS, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain meaning, language, and context are denied.

310. TVA denies the allegations in Paragraph 310.

311. TVA denies the allegations in Paragraph 311.

312. TVA denies the allegations in Paragraph 312.

**ANSWER TO PRAYER FOR RELIEF**

TVA denies that Plaintiffs are entitled to the relief requested, or to any other relief.

**AFFIRMATIVE DEFENSES**

TVA pleads the following affirmative defenses:

1. All allegations not expressly admitted herein are denied.

2. Plaintiffs' NEPA claims are barred to the extent they fail to state a claim upon which relief may be granted.

3. Plaintiffs may lack standing to pursue the asserted NEPA claims.

4. The Court may lack subject-matter jurisdiction.

5. Plaintiffs have forfeited any claims for which they failed to exhaust administrative remedies.

6. TVA's least-cost planning decisions are committed to agency discretion by law.

7. The actions taken by TVA and challenged herein were reasonable and consistent with and authorized by the TVA Act and applicable federal statutes and regulations and are reasonably related to the governmental functions carried out by TVA, and such actions were not arbitrary, capricious, or otherwise contrary to law.

42

8.    Plaintiffs' claims are barred to the extent they are an improper collateral attack on

other TVA environmental reviews including, but not limited to, the 2019 IRP EIS.

TVA reserves the right to amend its Answer as to its existing defenses and/or to assert such

other and additional defenses available to it at such time and to such extent as is warranted and as

may be revealed as the case progresses or when justice so requires.

WHEREFORE, TVA prays that this action be denied as to it and that TVA recover its costs

and such other relief, legal and equitable, to which it is entitled.

<div style="margin-left:40%;">

Respectfully submitted,

*s/David D. Ayliffe*
David D. Ayliffe (TN BPR 024297)
Associate General Counsel
F. Regina Koho (TN BPR 029261)
Lane E. McCarty (TN BPR 028340)
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.8964

Attorneys for Tennessee Valley Authority

</div>

128358652

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically through the Court's Electronic Filing System. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and as listed below. Parties may access these filings through the Court's electronic filing system.

O.W. "Trey" Bussey, Esq.
Amanda Garcia, Esq.
1033 Demonbreun Street, Suite 205
Nashville, Tennessee 37203
Telephone: (615) 921-9470
Facsimile: (615) 921-8011
tbussey@selctn.org
agarcia@selctn.org

Gregory Buppert, Esq.
120 Garrett Street, Suite 400
Charlottesville, Virginia 22902
Telephone: (434) 977-4090
Facsimile: (434) 993-5549
gbuppert@selcva.org

Attorneys for Plaintiffs

*s/David D. Ayliffe*
Attorney for Tennessee Valley Authority